Granger, C. J.
Numerous errors are assigned, but notice will be taken only of the instructions to the jury given and refused.
The lease with its extensions was before the jury containing important provisions bearing upon the question, “ Was Sinton in control of the elevator when it fell ? ” but the court said no word to the jury as to the meaning of any elause. By express terms the lessees were guaranteed possession of the demised premises during the term, and were burdened with the duty of “ with care and diligence ” keeping the same in good order and condition during the term from January, 1870, until January 1,1874, when Sin-ton agreed to keep the elevator in repair, “ providing the lessees hereto use proper and judicious care in the use of the same.”
It seems plain that down to January 1, 1874, Sinton had no right to enter the premises against the will of the lessees. Upon them rested the duty of taking care that the entire premises should be kept in good order. To that express covenant the preceding stipulation that they would pay quarter yearly the total cost of keeping in good order “ all the parts of said hoisting apparatus contained in the said premises hereby leased” must yield. The one by plain words placed the responsibility for all care and diligence necessary to keep the entire premises in good order on the lessees. The other by implication only, tended to put upon Sinton responsibility for the elevator. In order to fulfil the promise to “ with care and diligence keep the premises in good order and condition,” the lessees were bound to *166 malee all repairs except those required by the elevator, and to duly notify Sinton whenever the elevator required repairs. It was the duty of the court to construe the written contract for the jury. Until they knew what it meant, standing alone, they could not properly apply the evidence as to the conduct of the parties. Prior to 1874, the true meaning of the lease was a renting to the lessees of a building, including an elevator, and also the services of an engineer selected and paid by Sinton. The lessees had entire possession, with the entire duty of using care and diligence to keep the entire leased premises in good order. If repairs were needed by the elevator it was for them to notify Sinton, and his duty to then advance the money to pay for them ’ as made — the lessees reimbursing him at the end of the quarter. This construction gives effect to both clauses in the lease, and is reasonable in itself. The wire rope, the part of the apparatus most liable to get out of order, was before the eyes and in the hands of the lessees and their employés every day; the lessees were to pay for the repairs; they and their emploj'és were most directly interested in its being maintained in good order, and had the best means of learning when repairs were needed. Any suspension of the use, for repairs, affected their business. Neither Sinton, nor the engineer, could suspend that use without the lessees’ consent. Sinton was distant; the engineer’s usual post was in another building.
The testimony touching the course of dealing of the parties prior to 1874, accords with this construction. While Sinton employed the engineer, he referred him to the tenants as the persons for whom he was employed. To them the engineer sent persons having bills for repairs, and to them he applied for an increase in his •wages. Sinton did not examine, either in person or by agent, as to the need of repairs for the machinery. The tenants notified him when they were needed; then he caused them to be made and paid for them, — they refunding. During the first four years of the lease there is no proof of any con *167 duct of the parties indicating that Sinton was to make any repairs to the elevator except when notified by the tenants.
Did his agreement to “ at his own cost keep the elevator in repair, providing the lessees were to use proper and judicious care in the use of the same,” place him in control of the elevator after January 1, 1874? Standing alone the words may imply soniewhat in that direction. But the express words giving to the lessees possession of the whole-premises remained unaltered. Give full effect to them, and the new stipulation bound Sinton to make such necessary repairs to the elevator as the tenants should call for at Ids own cost. The testimony showed no change in the course of dealing after January 1, 1874, except that Sinton did not, at the end of the quarter, collect from the' lessees the expense incurred about the elevator.
The omission by the court of a construction of the lease and its extension, was calculated to mislead the jury. In effect it told them that the terms of the lease and its extension could not materially aid them in making a verdict.
The first instruction asked for by Sinton should have been given. It was germane to the true construction of the lease as extended and the conduct of the parties.
The fourth instruction asked for was proper as a part of a construction of the contracts.
The fifth instruction asked for was pointed at certain evidence put in by the plaintiff, of a character likely to mislead the jury, and was proper in itself. Although it contained a few words bearing more strongly against Sin-ton than the law required; with his express consent the court could rightfully include them.
The evidence set out in the bill of exceptions seems to us clearly insufficient to prove that “ Sinton had the control, direction and management of the machinery, so that in con-. nection with his agreement to keep the elevator in repair, he did not merely lease an elevator, but he undertook to supply transportation 'or carriage.” On the contrary, we think it showed, that, in addition to renting the premises, Sinton undertook to furnish to the lessees an engineer, to *168 advance tlie moneys required to pay for operating and running the machinery, and to make such repairs thereof- as the tenants should call for; they agreeing to use diligence and care in seeing that all proper repairs should be made or called for; and that Sinton made all repairs called for by the tenants.
The claim of the plaintiff that Sinton was at fault in originally placing that elevator in the building, must yield to the uncontested facts that it was of a plan somewhat generally in use, and that itself was in constant use for well nigh five years without accident. It follows, then, that as Sinton was not in fault in originally placing the elevator in the building; as he made all repairs called for, and was not bound to do more, and as he was not in possession or control of, or managing the elevator, when it fell, the case does not call for comment upon the numerous authorities cited by counsel.

Judgments reversed.